UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JEFFREY ALLEN ROWE,

  Plaintiff,

v.   CAUSE NO. 3:20-CV-1013-DRL-MGG

WEXFORD OF INDIANA LLC *et al.*,

  Defendants.

OPINION & ORDER

Jeffrey Allen Rowe, a prisoner without a lawyer currently housed at the Indiana State Prison, initiated this lawsuit in the United States District Court for the Southern District of Indiana. *Rowe v. Wexford*, 1:20-CV-01626-JRS-TAB (S.D. Ind. filed June 12, 2020). After recently amending his complaint, the case was transferred to this court. In his amended complaint (titled as "Consolidated and Amended Supplemental Complaints") (ECF 25), he has sued fourteen separate defendants over the medical care he has received (or lack thereof) at both New Castle Correctional Facility and Indiana State Prison for an epididymal head cyst on his left testicle and a possible varicocele. He further alleges that several defendants at Indiana State Prison violated his right to privacy in his medical affairs and retaliated against him for complaining about the inadequacy of his care.

This is not the only complaint that Mr. Rowe has filed about his medical condition. In a separate action, *Rowe v. Dillow*, 1:17-CV-03288-TWP-MJD (S.D. Ind. filed Sept. 15, 2017), he is proceeding against eleven separate defendants based on similar claims. In this case, he seeks both monetary damages and injunctive relief.

A filing by an unrepresented party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. §

1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

Mr. Rowe was diagnosed with a 13-millimeter epididymal head cyst on his left testicle following an ultrasound on July 8, 2017 while he was incarcerated at the New Castle Correctional Facility. A repeat ultrasound in February 2018 confirmed this diagnosis. On April 9, 2018, Dr. Neil Fisher examined Mr. Rowe and diagnosed him as having a varicocele. Mr. Rowe concedes that there is some uncertainty about this diagnosis, however, as the previous ultrasound did not reveal evidence of a varicocele. The cyst causes Mr. Rowe to experience excruciating pain when he is not receiving effective pain management. On a scale of zero to ten, Mr. Rowe rates his pain as a seven or eight, with spikes to nine or ten. This pain impacts nearly every aspect of Mr. Rowe's life. Since diagnosis, he has been prescribed each of the following: Toradol, acetaminophen/Tylenol, doxycycline, tramadol/Ultram, naproxen, prednisone, meloxicam/Mobic, and four different athletic supporters. He also takes Cymbalta, which can be used to treat pain, for another condition. Of these, only one medication (tramadol/Ultram) has proven effective in managing Mr. Rowe's pain. Another medication (meloxicam/Mobic) irritated his acid reflux.

During the course of his treatment, four different doctors, including Defendants Dr. Kenneth Robertson and Dr. Mark Cabrera, have indicated that a consultation with a urologist was warranted. Another prison doctor (not a defendant here) once mentioned to Mr. Rowe that, if he were not a prisoner, the cyst would have been removed "a long time ago." ECF 25 at 3.

On April 9, 2018, Dr. Fisher discontinued tramadol/Ultram. Dr. Fisher told Mr. Rowe that he did not need a narcotic pain medication and that he needed to learn to live with his testicular pain.

On May 31, 2018, Mr. Rowe saw Dr. Robertson and told him that he was in nearly constant excruciating pain and that the meloxicam/Mobic was not helping but was aggravating his reflux. He

2

asked for another effective treatment and a referral to a urologist. Dr. Robertson discontinued the meloxicam/Mobic but did not provide any alternative pain medication. He said that a previous request that Mr. Rowe be seen by a urologist had been denied, but he represented that he would submit a new one. He failed to make such a request according to the allegations to date.

On July 12, 2018, Mr. Rowe saw Dr. Cabrera and told him about his pain. He also told him that all pain medications had been discontinued, that he had requested a consultation with a urologist, and that a doctor had previous told him the cyst would have been removed if he were not a prisoner. He again asked for effective pain medication and a referral to a urologist. Dr. Cabrera again put him on meloxicam/Mobic and acetaminophen/Tylenol though Mr. Rowe told him these medications were ineffective, and the meloxicam/Mobic irritated his reflux. Dr. Cabrera agreed that he should see a urologist but then delayed in making that request until August 15, 2018. When Mr. Rowe saw Dr. Cabrera on August 15, 2018 and September 28, 2018, he again refused to alter his medication regimen.

Dr. Fisher denied the referral requests that were submitted by Dr. Robertson and Dr. Cabrera. Dr. Fisher allegedly told Dr. Cabrera that he can only treat Mr. Rowe onsite with medications that Mr. Rowe asserts have proven ineffective in managing his pain.

Mr. Rowe saw Dr. Fisher again on October 31, 2018. Mr. Rowe reiterated what he told the other doctors – he is in excruciating pain, the medication he has received is not working, and he wants effective pain management and a referral to a urologist. Dr. Fisher allegedly denied the request for a referral to a urologist, stating that it would cost too much for the urologist to tell them what they already know. He again told Mr. Rowe that he needed to learn to live with his pain. He refused to alter Mr. Rowe's medications.

Mr. Rowe saw Dr. Nwannunu on April 10, 2019. He again shared that he was in nearly constant excruciating pain, that many medications had been tried but only tramadol/Ultram had worked, and that he would like effective pain medication, whether tramadol/Ultram or something

that he had not yet tried. Dr. Nwannunu prescribed Tylenol, calling it a "miracle drug" that was "very strong." ECF 25 at 7. This was consistent with Dr. Nwannunu's practice at other visits, where he also prescribed medications that Mr. Rowe had previously taken and knew to be ineffective in managing his pain.

On January 3, 2020, following his transfer to Indiana State Prison, Mr. Rowe saw Dr. Marthakis. He told her that he was in nearly constant excruciating pain. He also told her that Dr. Robertson and Dr. Cabrera referred him to see a urologist, but Wexford and/or Dr. Fisher had denied the request. He told her that tramadol/Ultram was effective in relieving his pain, but he was taken off of it on April 9, 2018, and had not received effective pain management since that time. Instead, he had been prescribed medications like acetaminophen/Tylenol and meloxicam/Mobic even though they don't work. He also told her that his athletic supporter was lost when he was transferred to ISP, but it actually increases his pain. Dr. Marthakis told Mr. Rowe that nothing changed just because he transferred prisons. He would not be referred to a urologist and he would receive no pain medication stronger than acetaminophen/Tylenol. She called him a "cry baby" and prescribed only a small amount of Tylenol because he can purchase it from the commissary. She speculated that he was worried about cancer, but he assured her that was not the problem – he knew the cyst was benign. He emphasized that the problem is the pain. He was provided with sufficient Tylenol for five days, a new athletic supporter even though it does not help, and blood test to screen for cancer.

On May 14, 2020, Mr. Rowe saw Nurse Dobbs about his pain. She would not refer him to a provider and gave him only enough Tylenol for five days even though he told her that it doesn't help.

Mr. Rowe saw Dr. Marthakis again on May 22, 2020. He told her that Tylenol was ineffective, and he needed something stronger. She again provided only sufficient Tylenol for five days.

Mr. Rowe next saw Dr. Marthakis on June 26, 2020. This time, Mr. Rowe was called into the nurses' station where numerous other people were present: Nurse Tiffany, Nurse Stephanie, Sgt.

4

Thompson, Sgt. Bauer, and C.O. Hilliker. Mr. Rowe asked Sgt. Thompson, Sgt. Bauer, and C.O. Hilliker to leave because his confidential medical condition would be discussed. They refused. He again expressed to Dr. Marthakis that he was in excruciating pain, that the medications available at the commissary provide no relief, that he cannot afford medication from the commissary because he is indigent, and that the athletic supporter increases his pain. Dr. Marthakis indicated that his pain may never go away. She said that she would not order another ultrasound, send him to a urologist, or provide any other treatment because he could order over-the-counter pain medication from the commissary. She further indicated that, if he submitted another request for health care, she would write him up and that there would be twice as many people at the next visit. Sgt. Thompson and Sgt. Bauer also threatened Mr. Rowe with a write up during this encounter.

Mr. Rowe alleges that Dr. Marthakis also instructed the nursing staff to no longer refer Mr. Rowe to a provider for treatment of is testicular cyst. In other words, she effectively limited his treatment to what the nursing staff could provide, which does not include prescribing effective pain management or a referral to a urologist. Further, she instructed nursing staff to neither provide over-the-counter pain medication nor seek physician approval to provide such medications to Mr. Rowe.

On July 31, 2020, Mr. Rowe saw Nurse Tanya for his condition. She told him that she could neither refer him to a doctor nor provide any medication because Dr. Marthakis had so directed. She also told him that the Warden is responsible for providing him with over-the-counter medications if he could not afford them.

In medical cases, the Constitution is violated only when a defendant is deliberately indifferent to an inmate's serious medical needs. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "[C]onduct is deliberately indifferent when the official has

5

acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citation omitted). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

That said, "the Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Id.* Inmates are "not entitled to demand specific care [nor] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Moreover, constitutionally adequate care does not require the total alleviation of pain. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd.").

A delay in providing treatment can constitute deliberate indifference when it causes unnecessary pain or suffering. *Arnett v. Webster*, 658 F.3d 742, 752-53 (7th Cir. 2011); *Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir. 2008). Here, Mr. Rowe has alleged facts from which it can be plausibly inferred that Dr. Kenneth Robertson, Dr. Mark Cabrera, Dr. Neil Fisher, Dr. John Nwannunu, Dr. Marthakis, Nurse Dobbs and Nurse Tanya were each deliberately indifferent to his serious medical needs. Therefore, he will be granted leave to proceed on these claims.

Mr. Rowe also believes that having non-medical staff member present on July 26, 2020, violated his right to privacy and confidentiality. "Prisoners, though, at best have very limited privacy

6

rights, and we have not previously held in a published opinion that they enjoy a constitutional right to privacy in their medical information." *Franklin v. McCaughtry*, 110 F. App'x 715, 719 (7th Cir. 2004). In *Franklin*, this circuit suggested that "the purposeful dissemination of intensely private medical information about the complaining inmates" may violate the inmates' constitutional rights. *Id.* However, the appellate court held that the mere presence of correctional staff and fellow inmates during medical appointments for "fairly pedestrian maladies" did not rise to the level of a constitutional violation. *Id.* In light of *Franklin*, Mr. Rowe's allegations that three members of the custody staff were present during a single medical appointment are insufficient to state a plausible constitutional violation.

Mr. Rowe further alleges that Dr. Marthakis, Sgt. Thompson, and Sgt. Bauer each retaliated against him for continuing to request healthcare when he did not receive treatment; namely, by threatening to write him up. To prevail on his First Amendment retaliation claim, [Mr. Rowe] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Here, Mr. Rowe suffered no adverse action; he was merely threatened with an adverse action—namely, a write-up. Thus, he may not proceed on this claim.

Mr. Rowe has also sued Wexford of Indiana, LLC. He alleges that Wexford violated his rights through policies, practices or customs prohibiting staff from providing costly services and long-term pain management. There is no general *respondeat superior* liability under 42 U.S.C. § 1983. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *see also Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) ("[A] private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights."). Though Mr. Rowe suggests that his rights were violated due to a corporate policy

7

or custom, the facts of the complaint do not support this claim. Rather, the facts suggest that he is suing Wexford because of the poor decisions that its staff allegedly made in connection with his care. This is not a basis for permitting Mr. Rowe to proceed against Wexford.

Finally, Mr. Rowe has sued Dr. Kristen Dauss, the Indiana Department of Correction's Chief Medical Officer, in her official capacity for injunctive relief only. Mr. Rowe seeks preliminary injunctive relief in the form of effective treatment for his epididymal head cyst and possible varicocele, a consultation with a urologist, an order directing that defendants refrain from retaliating against him, and an order directing that non-medical staff not be present during medical appointments. Because he will not be granted leave to proceed on his privacy or retaliation allegations, his requests for injunctive relief related to those allegations cannot be granted.

As for his request for effective treatment and a consultation with a urologist, Mr. Rowe is entitled only to adequate medical care as required by the Constitution. There may be multiple methods of providing this care, and Mr. Rowe cannot dictate how it is provided. "The PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right." *Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012) (quotation marks, brackets, and citations omitted). Therefore, injunctive relief – if granted – would be limited to requiring that Mr. Rowe be provided with constitutionally adequate medical care for his condition, as required by the Eighth Amendment. He may proceed on a claim for injunctive relief to obtain medical care for his condition that is consistent with the Eighth Amendment. However, the Warden of Indiana State Prison in his official capacity is a more appropriate defendant to provide this relief than the Indiana Department of Correction's Chief Medical Officer. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) ("[T]he warden . . . is a proper defendant [for] injunctive

8

relief [and is] responsible for ensuring that any injunctive relief is carried out."). Therefore, the clerk will be directed to edit the docket accordingly by adding the Warden of Indiana State Prison in his official capacity as a defendant.

For these reasons, the court:

(1) DIRECTS the Clerk to add the Warden of the Indiana State Prison in his official capacity as a defendant;

(2) GRANTS Jeffrey Allen Rowe leave to proceed against the Warden of Indiana State Prison in his official capacity on an injunctive relief claim to provide constitutionally adequate treatment for his epididymal head cyst and possible varicocele, as required by the Eighth Amendment;

(3) GRANTS Jeffrey Allen Rowe leave to proceed against Dr. Kenneth Robertson, Dr. Mark Cabrera, Dr. Neil Fisher, Dr. John Nwannunu, Dr. Nancy Marthakis, Alecia Dobbs, R.N., and Nurse Tiffany in their individual capacities for compensatory and punitive damages for providing constitutionally inadequate treatment for his epididymal head cyst and possible varicocele, in violation of the Eighth Amendment;

(4) DISMISSES Dr. Kristen Dauss, Nurse Tiffany, Nurse Stephanie, Sgt. Thompson, Sgt. Bauer, C.O. Hilliker, and Wexford of Indiana, LLC;

(5) DISMISSES all other claims pursuant to 28 U.S.C. § 1915A;

(6) DIRECTS the Clerk to request waiver of service from (and if necessary, the United States Marshals Service to serve process on) the Warden of the Indiana State Prison, at the Indiana Department of Correction with a copy of this order and the amended complaint (ECF 25) pursuant to 28 U.S.C. § 1915(d);

(7) DIRECTS the Clerk to request waiver of service from (and if necessary, the United States Marshals Service to serve process on) Dr. Kenneth Robertson, Dr. Mark Cabrera, Dr. Neil Fisher,

Dr. John Nwannunu, Dr. Marthakis, Alecia Dobbs, R.N., and Nurse Tanya at Wexford of Indiana, LLC with a copy of this order and the amended complaint (ECF 25) pursuant to 28 U.S.C. § 1915(d);

(8) DIRECTS the clerk to fax or email a copy of the request for waiver of service, this order, and the amended complaint (ECF 25) to the Warden of the Indiana State Prison;

(9) ORDERS the Warden of Indiana State Prison to file an affidavit or declaration with the court by **December 28, 2020**, explaining how Jeffrey Allen Rowe's epididymal head cyst and possible varicocele is being treated in a manner that comports with the Eighth Amendment's requirements;

(10) ORDERS Wexford of Indiana, LLC, and the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of any defendant that does not waive service, if they have such information; and

(11) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), the Warden of Indiana State Prison, Dr. Kenneth Robertson, Dr. Mark Cabrera, Dr. Neil Fisher, Dr. John Nwannunu, Dr. Nancy Marthakis, Alecia Dobbs, R.N., and Nurse Tanya to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

December 11, 2020                     *s/ Damon R. Leichty*
                                      Judge, United States District Court