UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JEFFREY ALLEN ROWE, <br><br> Plaintiff, <br><br> v. <br><br> WEXFORD OF INDIANA LLC *et al.*, <br><br> Defendants. | CAUSE NO. 3:20-CV-1013 DRL-MGG |

<u>OPINION & ORDER</u>

Jeffrey Allen Rowe, a prisoner without a lawyer, sued fourteen separate defendants over the medical care he has received (or lack thereof) at both New Castle Correctional Facility and Indiana State Prison for an epididymal head cyst on his left testicle and a possible varicocele. ECF 25. In addition to the allegedly inadequate medical care, Mr. Rowe says several defendants at Indiana State Prison violated his right to privacy in his medical affairs and retaliated against him for complaining about the inadequacy of his care. *Id.* He was granted leave to proceed against the Warden of Indiana State Prison in his official capacity on an injunctive relief claim to provide constitutionally adequate treatment for his epididymal head cyst and possible varicocele, as required by the Eighth Amendment. ECF 32. He was also granted leave to proceed against Dr. Kenneth Robertson, Dr. Mark Cabrera, Dr. Neil Fisher, Dr. John Nwannunu, Dr. Nancy Marthakis, Alecia Dobbs, R.N., and Nurse Tanya in their individual capacities for compensatory and punitive damages for providing constitutionally inadequate treatment for his epididymal head cyst and possible varicocele, in violation of the Eighth

Amendment. *Id.* He was not granted leave to proceed on allegations that his right to privacy was violated. He was not granted leave to proceed on his allegations that he was retaliated against for engaging in protected speech. And, he was not granted leave to proceed against Wexford of Indiana, LLC. He has now filed two separate motions for reconsideration challenging four aspects of this court's screening order. ECF 41; ECF 75.

Mr. Rowe asks the court to reconsider the denial of leave to proceed on his allegations that his right to medical privacy were violated. Mr. Rowe alleges that, when he saw Dr. Marthakis on June 26, 2020, Nurse Tiffany, Nurse Stephanie, Sgt. Thompson, Sgt. Bauer, and C.O. Hilliker were all present. Mr. Rowe asked Sgt. Thompson, Sgt. Bauer, and C.O. Hilliker to leave because his confidential medical condition would be discussed. They refused. He again expressed to Dr. Marthakis that he was in excruciating pain, that the medications available at the commissary provide no relief, that he cannot afford medication from the commissary because he is indigent, and that the athletic supporter increases his pain. Dr. Marthakis indicated that his pain may never go away. She said that she would not order another ultrasound, send him to a urologist, or provide any other treatment because he could order over-the-counter pain medication from the commissary. She further indicated that, if he submitted another request for health care, she would write him up and that there would be twice as many people at the next visit. Sgt. Thompson and Sgt. Bauer also threatened Mr. Rowe with a write-up during this encounter.

As noted in this court's screening order, "[p]risoners, though, at best have very limited privacy rights, and we have not previously held in a published opinion that they

2

enjoy a constitutional right to privacy in their medical information." *Franklin v. McCaughtry*, 110 F. App'x 715, 719 (7th Cir. 2004). In *Franklin*, this circuit suggested that "the purposeful dissemination of intensely private medical information about the complaining inmates" may violate the inmates' constitutional rights. *Id.* However, the appellate court held that the mere presence of correctional staff and fellow inmates during medical appointments for "fairly pedestrian maladies" did not rise to the level of a constitutional violation. *Id.* In light of *Franklin*, the court determined that Mr. Rowe's allegations were insufficient to state a plausible constitutional violation.

Mr. Rowe argues that his condition involves his testicles and is thus "intensely more private." ECF 41 at 2. "Whether, and to what extent, an inmate retains a Constitutional right of privacy in his/her medical records is an open question in [this circuit]." *Adell v. Hepp*, No. 14-CV-1277-JPS, 2015 WL 6680237, 4 (E.D. Wis. Nov. 2, 2015); *see also Massey v. Helman,* 196 F.3d 727, 742 n. 8 (7th Cir. 1999). "Courts that have extended a constitutional right to privacy for prisoners have done so only where the medical information pertained to some 'excruciatingly' or 'intensely' private circumstance, such as an HIV positive status or transsexual identity."*Adell*, 2015 WL 6680237 at 5. Though Mr. Rowe may desire greater privacy, and though the court appreciates that his circumstances may beg more privacy, the mere fact that his ailment affects his testicles doesn't elevate his claim to one entitled to constitutional privacy protections. Mr. Rowe's condition is not uncommon among men. "About 3 out of 10 men will get them at some point in their lives." https://www.webmd.com/men/spermatocele-or-epididemal-cysts#1 (last viewed Feb. 19, 2021). This is wholly different than disclosing that an inmate

is a transexual or HIV positive. Furthermore, the disclosure was limited to a brief discussion of Mr. Rowe's pain and treatment. No other inmates were present. Thus, to the extent that Mr. Rowe enjoys a right to privacy in his medical information, that right would not encompass the disclosure at issue here.

Mr. Rowe also argues that the disclosure violated the Eighth Amendment because it was designed to humiliate. Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). "An Eighth Amendment claim based on the infliction of psychological pain on an inmate requires (1) objectively, sufficiently serious misconduct, and, (2) subjectively, an intent to wantonly inflict psychological pain for no legitimate purpose." *Snow v. List*, No. 11-CV-3411, 2014 WL 1515613, 1 (C.D. Ill. April 17, 2014) (*citing Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003)). The alleged conduct was not objectively or sufficiently serious. Additionally, while Mr. Rowe asserts that correctional staff members were present for purposes of humiliating him, he has not presented facts from which it can be plausibly inferred that the guards were present to inflict psychological harm wantonly. Accordingly, the court's prior order must stand.

Next, Mr. Rowe takes issue with the court's determination that his amended complaint did not state a claim for retaliation. The court's screening order indicated that Mr. Rowe alleged that Dr. Marthakis, Sgt. Thompson, and Sgt. Bauer each retaliated against him for continuing to request healthcare when he did not receive treatment; namely, by threatening to write him up. To prevail on his First Amendment retaliation claim, [Mr. Rowe] must show that (1) he engaged in activity protected by the First

4

Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Mr. Rowe was not permitted to proceed because he did not allege that he suffered an adverse action. Mr. Rowe now argues that there were two adverse actions the court did not consider: the disclosure of his medical information and being threatened with having additional people present at future medical appointments. The disclosure of his medical information to three staff members during a medical appointment is not sufficiently adverse to deter a person or ordinary firmness from engaging in future First Amendment activity. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). The same is true of the presence of additional staff at future meetings.

Additionally, Mr. Rowe argues that this court erred in permitting him to proceed against the warden on his injunctive relief claim instead of Dr. Kristen Dauss. The Seventh Circuit has held that "the warden . . . is a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out." *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). While *Gonzalez* may not stand for the proposition that the warden is the only defendant against whom an injunctive relief claim is appropriate, the warden is certainly an appropriate defendant. This case is already underway. The warden has responded to the request for preliminary injunctive relief,

and it is in the interest of judicial efficiency to proceed in accordance with this court's screening order.[1]

Finally, Mr. Rowe seeks reconsideration of the court's determination that he could not proceed against Wexford of Indiana, LLC. Mr. Rowe's amended complaint alleges that Wexford violated his rights through policies, practices or customs prohibiting staff from providing costly services and long-term pain management. There is no general *respondeat superior* liability under 42 U.S.C. § 1983. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *see also Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) ("[A] private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights."). The court noted that, although Mr. Rowe suggests that his rights were violated due to a corporate policy or custom, the facts of the amended complaint did not support this claim. Rather, his allegations suggested that he is suing Wexford because of the poor decisions that its staff allegedly made in connection with his care. This is not a basis for permitting Mr. Rowe to proceed against Wexford. In his motion to reconsider, Mr. Rowe contends that the court's ruling is tantamount to imposing a heightened pleading standard. Mr. Rowe is mistaken. A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[1] Mr. Rowe indicates that he could get transferred again and, if he does, his injunctive relief claim against the warden would be moot. This is mere speculation on Mr. Rowe's part.

(citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). Mr. Rowe didn't plead facts that made his claim plausible on its face. Therefore, the court's ruling must stand.

For these reasons, Jeffrey Allen Rowe's motions for reconsideration of the court's screening order (ECF 41; ECF 75) are DENIED.

SO ORDERED.

February 22, 2021                     *s/ Damon R. Leichty*
                                      Judge, United States District Court